United States District Court
Southern District of Texas
**ENTERED**
November 20, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| THE ESTATE OF ISIS LUCERO ESQUIVEL, ET AL., Plaintiffs, | § § § § | |
| v. | § § | Case No. 1:16-cv-40 |
| BROWNSVILLE INDEPENDENT SCHOOL DISTRICT, Defendant. | § § § § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

The Court has instructed the undersigned to determine what sanctions should issue against Defendant Brownsville Independent School District ("BISD") as a result of its failure to take reasonable steps to preserve certain evidence in this civil action. Dkt. No. 57 at 11-12. Specifically, the undersigned has been instructed to determine what sanctions are appropriate under Rule 37(e)(1) of the Federal Rules of Civil Procedure, as a result of BISD's failure to preserve corrupted video footage of the incident giving rise to this lawsuit. *Id*. For the reasons provided below, it is recommended that the Court: (1) instruct the jury that BISD failed to take reasonable steps to preserve the video footage; (2) instruct the jury that BISD's failure was not the result of bad faith, as there is no evidence that BISD intentionally failed to preserve the footage; (3) instruct the jury that the loss of the footage may have prevented Plaintiffs from producing evidence of BISD's liability; and (4) allow the parties to present evidence concerning the lost footage to the jury, including any

communications or evidence that might otherwise be protected by the attorney-client privilege.[1] Should Plaintiffs prevail at trial, it is additionally recommended that BISD be required to pay an additional amount, to be determined by the Court upon the trial's completion, to compensate Plaintiffs for the expenses incurred as a result of the lost video footage, including the expenses Plaintiffs have incurred in pursuing sanctions related to the lost footage.

## I. Jurisdiction

The Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## II. Background

This lawsuit was initiated on February 19, 2016, when Gregoria Alvarado and the Estate of Isis Lucero Esquivel filed "Plaintiffs' Original Complaint and Jury Demand" (hereinafter, "Plaintiffs' Complaint"). Dkt. No. 1. Gregoria Alvarado is the mother of Isis Lucero Esquivel, and the personal representative of her estate. *Id*. at 4. Tragically, Isis Lucero Esquivel (hereinafter, "Ms. Esquivel") passed away at Valley Baptist Medical Center in Brownsville, Texas on May 30, 2015. Dkt. No. 1 at 2; Dkt. No. 44-6 at 2-3.[2] Ms. Esquivel was originally hospitalized two weeks earlier

---

[1] To the extent that BISD possesses such evidence that it has not already produced, it is recommended that the Court order BISD to provide the evidence to Plaintiffs immediately.

[2] When citing to the record, the undersigned cites the electronic docket page numbers on the top of each page, rather than the page numbers listed within each exhibit.

as a result of an incident that took place at the Margaret Clark Aquatic/Adaptive Center (hereinafter, the "Aquatic Center"), a facility owned and operated by BISD. Dkt. No. 38 at 2-3. The incident took place on May 13, 2015, while Ms. Esquivel was in a therapy pool at the Aquatic Center participating in an Adaptive Physical Education Program (hereinafter, the "Aquatics Program") for students with special needs. *Id*. at 3-4; Dkt. No. 39 at 12.

Ms. Esquivel was 20 years old at the time of her death. Dkt. No. 1 at 1. She had cerebral palsy, intellectual disabilities, developmental delays, and hypertonicity in her limbs which caused her to suffer decreased mobility, muscle rigidity, and uncontrollable muscle spasms. Dkt. No. 39 at 6. She weighed less than 100 pounds, could not walk, and was non-verbal. Dkt. No. 1 at 1, 5; Dkt. No. 38-2 at 57. Ms. Esquivel was able to crawl short distances, use her arms to roll her wheelchair, and communicate through gazing, smiling, making sounds, and utilizing assistive technology. Dkt. No. 1 at 5. Ms. Esquivel "loved the water" and loved to "kick her arms and legs" in the water. Dkt. No. 38-3 at 51. She had participated in the Aquatics Program since grade school. Dkt. No. 38 at 3.

So that her daughter could participate in the Aquatics Program in 2015, Gregoria Alvarado submitted a form to BISD called the "Physician's Form, Adaptive Aquatics Swimming Program" (hereinafter, the "Physician's Form"). Dkt. No. 1 at 6. The form was completed on February 12, 2015, by Yogesh Trakru, M.D. of ABC Pediatrics of Brownsville, Texas. *Id*. The Physician's Form stated that Ms. Esquivel could participate in the Aquatics Program provided that:

1. Ms. Esquivel wear a nose clip;

2. Ms. Esquivel receive entire body support;

3. Ms. Esquivel receive one-to-one supervision;

4. Ms. Esquivel not be required to hold her breath;

5. Ms. Esquivel not be allowed to put her head underwater;

6. The pool water be kept between 91-93 degrees.

*Id*; *see also* Dkt. No. 39-7 at 1 (containing a copy of the Physician's Form).

On May 13, 2015, Ms. Esquivel visited the Aquatic Center with her Lopez High School class. Dkt. No. 1 at 6. At approximately 1:40 to 1:46 p.m., while in the pool, Ms. Esquivel began to vomit. *Id*. at 7. Dkt. No. 45-3 at 6.[3] Ms. Esquivel had seizure-like symptoms, turned blue around her mouth, and had problems breathing. *Id*. Ms. Esquivel was brought to the pool's edge, where the on-duty life guard cleared the vomit from her throat and helped her to resume breathing. Dkt. No. 38-5 at 13, 35-37, 66-67.

According to the records provided by the Brownsville Emergency Medical Service ("EMS"), EMS received a call from the Aquatic Center at 1:49 p.m. Dkt. No. 38-10 at 3. The EMS crew transported Ms. Esquivel to the Valley Baptist Medical Center and she arrived there at 2:29. *Id*. EMS records reveal that Ms. Esquivel's

---

[3] As will be detailed below, the parties dispute the cause of Ms. Esquivel's vomiting episode. Plaintiffs contend that Ms. Esquivel breathed in water and that this caused her to vomit. BISD contends that Ms. Esquivel did not breathe in water, but instead began to vomit up her lunch, and then breathed in the vomit.

breathing was labored at 2:00 p.m., and that she was alert. *Id*. at 4. The "primary impression" for Ms. Esquivel was listed as "Aspiration Pneumonitis."[4]

According to Plaintiffs, Ms. Esquivel was transferred out of the intensive care unit on May 22, 2015. Dkt. No. 39-5 at 11-12. "Her lungs were clear" and she was "awake, alert and in no acute distress." *Id*. at 11. She was assessed as having "post-acute respiratory distress secondary to aspiration." *Id*. at 12. On May 29, 2015, Ms. Esquivel underwent a procedure involving the placement of a "PEG (percutaneous endoscopic gastrostomy) flexible feeding tube," so that she "could be fed food, liquids and medications directly to her stomach bypassing her mouth and esophagus." *Id*. at 12.[5] During the procedure, Ms. Esquivel's vital signs became unstable and she went into respiratory and/or cardiopulmonary arrest. *Id*. Sadly, attempts to resuscitate Ms. Esquivel failed. *Id*. She was declared dead on May 30, 2015, pursuant to a do-not-resuscitate order. *Id*; Dkt. No. 39-5 at 12.

### III. The Parties' Allegations

**A. Factual Allegations**. The parties disagree about what occurred on May 13, 2015, the day Ms. Esquivel began to vomit while in BISD's pool (hereinafter

---

[4] Aspiration is defined as "the act of inhaling fluid or a foreign body into the bronchi and lungs, often after vomiting. *See* http://www.dictionary.com/browse/aspiration (last visited June 6, 2018). Pneumonitis is defined as "inflammation of the lung caused by a virus or exposure to irritating substances." *See* http://www.dictionary.com/browse/pneumonitis?s=t (last visited June 6, 2018).

[5] "Percutaneous endoscopic gastrostomy (PEG) is the preferred route of feeding and nutritional support in patients with a functional gastrointestinal system who require long-term enteral nutrition." *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4069302/ (last visited on June 6, 2018).

referred to as the "incident"). Specifically, the parties disagree about what caused Ms. Esquivel to vomit. Plaintiffs contend that, due to the fault of BISD, Ms. Esquivel vomited as a result of aspirating water. Dkt. No. 1 at 2. Plaintiffs indicate that this occurred after Laura Avitia, the BISD employee who was assisting Ms. Esquivel that day, left Ms. Esquivel near the pool unassisted while she went to go change her clothes. Dkt. No. 45 at 8. They state that when Avitia returned from changing, Ms. Esquivel was already in the pool. *Id*.

Plaintiffs assert that no BISD employee has admitted to: (1) bringing Ms. Esquivel into the pool; (2) supervising her while Avitia was changing clothes; or (3) handing her back to Avitia once Avitia entered the pool. Dkt. No. 1 at 7; Dkt. No. 39 at 12; Dkt. No. 45 at 8. Plaintiffs add that Avitia, who was holding Ms. Esquivel when she began to vomit, has testified that she cannot recall who transferred Ms. Esquivel into her care, even though Ms. Esquivel began to vomit seconds later. Dkt. No. 45 at 8; *see also* Dkt. No. 38-3 at 13-14 (containing Laura Avitia's testimony). Thus, although uncertain of exactly how it occurred, Plaintiffs contend that BISD allowed Ms. Esquivel's face to contact the water, either when bringing her into the pool, or during her class time in the pool, or by allowing her to fall into the pool. Dkt. No. 1 at pgs. 2-3, ¶ 6, and p. 7 note 3 (citing Dkt. No. 45-3 at 14); Dkt. No. 39 at 12-15.

BISD states that Ms. Esquivel was never submerged and denies that she aspirated water. Dkt. No. 38 at 4-6; No 48 at 2-3. Instead, BISD claims that Ms. Esquivel was brought into the pool with a special pool wheelchair and provided with

one-to-one supervision by a paraprofessional. *Id.*[6] Once in the pool, BISD asserts that Ms. Esquivel began to throw up, choke, and aspirate the vomit. *Id.* BISD's submissions indicate that Ms. Esquivel's vomit contained big chunks of ham and cheese sandwich, suggesting that her vomiting episode was potentially due to digestive issues. *Id*; Dkt. No. 38-4 at 65 ("You could tell what she ate. It was ham and cheese. The ham was, like, this big, yeah and the cheese -- there were big bulks of cheese."); Dkt. No. 38-5 at 65, 88 ("she was throwing up a lot of vomit, which was . . . a ham sandwich. . . . I actually saw chunks of ham and cheese and bread coming out. Her face was dry. . . . I didn't see any water. . . . It was mostly chunky. "); *Id.* at 88-89 ("And that's when I started noticing the vomit was actually coming out of her nose. Then that's when I noticed that Ms. Isis was turning kind of blue. That's when I noticed she stopped breathing, so I gave a good abdominal thrust. A chunk came out."); Dkt. No. 38-6 at 3 ("It is probable that Ms. Esquivel had malfunction of the mouth, throat and swallowing mechanism . . . . This would have greatly contributed to the tendency toward reflux or emesis . . . . Food particles were confirmed in material removed from the lungs during bronchoscopy on 5-20-15.") (errors in original). BISD contends that, far from being at fault for the incident, BISD employees administered life-saving procedures to clear the vomit from Ms. Esquivel's throat and restore her breathing. Dkt. No. 38 at 6.

---

[6] A paraprofessional is defined as a person trained to assist a professional, such as a teacher, who is herself unlicensed in the profession. *See* http://www.dictionary.com/browse/paraprofessional?s=t (last visited June 6, 2018).

**B. Plaintiffs' Request for Sanctions**. Plaintiffs state that BISD maintained video cameras in the Aquatic Center, and that one particular camera was programed to monitor the pool where the incident took place. Dkt. No. 1 at 9; Dkt. No. 45 at 11. Plaintiffs assert that, despite timely requesting video footage of the incident, BISD failed to produce it, claiming that the video was corrupted. *Id*. Plaintiffs note that BISD's Procedure Manual for the Aquatic Center contains a Crisis Management Plan which requires Aquatic Center staff to "get a copy of the pool security video system" after a crisis has occurred. Dkt. No. 1 at 6. Plaintiffs contend that they notified BISD of its duty to preserve the video footage in a letter dated June 4, 2015, and that BISD otherwise knew it had a legal duty to preserve the footage in anticipation of litigation. Dkt. No. 45 at 10-14.

Plaintiffs argue that BISD was grossly negligent in failing to preserve the footage. Dkt. No. 45 at 14.[7] As a sanction for this conduct, Plaintiffs ask the Court to: (1) award them the reasonable attorneys' fees they incurred in seeking sanctions; (2) prevent BISD from presenting the jury with evidence or argument that Ms. Esquivel's vomiting episode was caused by something other than the aspiration of pool water; (3) allow Plaintiffs to present the jury with evidence regarding BISD's loss of the video footage, including any communications or evidence that might otherwise be protected by the attorney-client privilege. Dkt. No. 62 at 2-4. Additionally, Plaintiffs argue that they should be compensated for the reasonable

---

[7] The Court has already determined that BISD's loss of the video footage was not the result of bad faith. *See* Dkt. No. 52 at 56; Dkt. No. 57 at 11.

attorneys' fees and litigation expenses that they have incurred pursuing their claims without the benefit of the video footage. *Id*. at 2-3. More specifically, Plaintiffs state:

> Plaintiffs should be awarded reasonable attorney fees and litigation expenses they incurred in:
>
> (1) investigating the loss of the spoliated evidence;
>
> (2) investigating how Isis was placed into the pool;
>
> (3) investigating whether, at any point on the day in question, Isis' face was submerged in water or whether she was forced to hold her breath — conditions that should not have existed pursuant to her Physician Form;
>
> (4) investigating what accommodations on Isis' Physician Form were provided to her on the day in question (e.g., nose clip, one-on-one supervision, head and neck support, full body support);
>
> (5) investigating Defendant's contention that Isis' vomiting resulted from food; and
>
> (6) having to compensate Plaintiffs' experts for the additional time they were required to spend in reviewing the greater amount of discovery that resulted from the loss of the video; and
>
> (7) having to prove through alternative evidence that Isis vomited as a result of aspirating water (e.g., Plaintiffs' retainment of forensic pathologist Dr. Robert C. Bux, who has opined that Isis "died as the result of complications of aspiration of water").

*Id*. (footnotes omitted, errors in original).

## IV. Discussion

Under Rule 37(e)(1), if a court finds that a party's loss of information causes another party prejudice, then the court may "order measures no greater than necessary to cure the prejudice[.]" FED. R. CIV. P. 37(e)(1). In determining whether

to order curative measures, the Court should consider the importance of the lost information, and the prejudice caused by the loss, at a minimum.

> An evaluation of "prejudice" from the loss of information necessarily includes an evaluation of the information's importance in the litigation. FED. R. CIV. P. 37(e)(1) does not place the burden of proving or disproving prejudice on one party or the other; instead, the rule leaves judges with discretion to determine how best to assess prejudice in particular cases. Once a finding of prejudice is made, the court is authorized to employ measures "no greater than necessary to cure the prejudice."

Handbk. Fed. Civ. Disc. & Disclosure § 12:16 (4th ed., Aug. 2017) (citations to Advisory Notes and case law omitted).

As noted in the undersigned's Report and Recommendation ("R&R"), the relevance and importance of the lost footage is undisputed. Dkt. No. 52 at 57.

> Had BISD preserved the footage, it would likely have shown what occurred immediately prior to Ms. Esquivel's vomiting episode. Thus, BISD's failure either prejudiced Plaintiffs, by depriving them of evidence showing that BISD's conduct exceeded negligence, or it prejudiced BISD, by depriving it of evidence showing that its conduct did not exceed negligence.

*Id.*[8] Further, although the undersigned found that the record evidence did not support a finding that Plaintiffs, rather than Defendant, had suffered prejudice as a result of the lost footage,[9] the Court declined to adopt this conclusion. Dkt. No. 57 at 11 ("Clearly, Plaintiffs have been prejudiced by the loss of the video; thus, the remaining issue is to determine measures 'no greater than necessary' to cure said prejudice."). In declining to adopt the undersigned's conclusion, the Court found that

---

[8] As discussed in the R&R, to overcome BISD's Rule 56 challenge, Plaintiffs were required to produce evidence that BISD's conduct exceeded negligence. Dkt. No. 52 at 23.

[9] Dkt. No. 52 at 57-58.

Ms. Esquivel had aspirated water, and that the lost video footage "would have unequivocally aided the jury" in deciding whether her aspiration of water was due to BISD's deliberate indifference versus its negligence. *Id*.

> Plaintiffs have produced sufficient evidence to permit a reasonable jury to infer that *Ms. Esquivel's aspiration of water* and seizure-like symptoms on the date of the incident was not the result of Defendant's negligence, but rather the result of Defendant's deliberate disregard for the accommodations required by her physician. The lost video would have unequivocally aided the jury in said causal determination.

*Id*. (emphasis added).[10]

The Court additionally suggested that, as a sanction, it might be appropriate to prevent BISD from presenting the jury with evidence that Ms. Esquivel aspirated on her own vomit, rather than water. Dkt. No. 57 at 11, n. 22.

> As a result of the lost video, Defendant's argument suggesting that Ms. Esquivel's incident was the result of a different source-such as a ham and cheese sandwich-may be excluded to avoid further prejudice to Plaintiffs. *See* FED. R. CIV. P. 37(e)(l), advisory committee's note to 2015 amendment ("[I]t may be appropriate to exclude a specific item of evidence to offset prejudice caused by failure to preserve other evidence that might contradict the excluded item of evidence."); *see also Villalon, et al. v. Cameron County*, Civ. No. 1:15-cv-161, Docket No. 55 (S.D. Tex. Jun. 22, 2017) (Olvera, J.) (granting spoliation sanctions under Rule 37(e)(1) despite lack of proof that defendants acted in bad faith).

---

[10] The undersigned did not find that Ms. Esquivel had aspirated water, but instead found that a material question of fact existed on the issue because both sides had presented evidence to support their respective theories as to the cause of the incident. Dkt. No. 52 at 17-18 (citing Dkt. No. 38-6 at 3 and Dkt. No. 39-5 at 11). *See* Dkt. No. 38-6 at 3 ("Food particles were confirmed in material removed from the lungs during bronchoscopy on 5-20-15. . . . Review of the X-rays from Ms. Esquivel's hospitalization show a patchy infiltrate that was, in reasonable probability consistent with a 'lumpy' or irregular distribution of particulate stomach contents rather than water."); Dkt. No. 39-5 at 11 ("Admission history indicates that patient, Isis Esquivel, was 'inside the pool,' and that she 'aspirated water' (See VBMC record ESQ000860).").

*Id*. The Court then "**REMAND[ED]** the issue back to the Magistrate Court for a hearing to determine the appropriate sanctions under FED. R. CIV. P. 37(e)(1) as a result of the lost video." *Id*.

Upon receipt of the Court's Order, the undersigned ordered the parties to "submit briefing, along with any relevant evidence, regarding the spoliation sanctions issue addressed in the Court's Order of September 11, 2018." Dkt. No. 59 at 1. The undersigned additionally set an evidentiary hearing for October 26, 2018. Dkt. No. 60 at 1. The parties submitted briefing and appeared for the evidentiary hearing. *See* Dkt. Nos. 61-62, and Minute Entry dated October 26, 2018. With the exception of a declaration concerning fees and costs filed by Plaintiffs' counsel (Dkt. No. 62-1), neither side submitted evidence that was not already in the record. *Compare* Dkt. Nos. 61-1, 61-2, and 61-3, *with* Dkt. Nos. 38-5, 38-6, and 38-8.

In its briefing, BISD argues that the sanction suggested by the Court constitutes a death penalty sanction. Dkt. No. 61 at 7.

> Defendant BISD would show the Court that District Judge Olvera in his September 11, 2018 Order indicates in Fn22 that "as a result of the lost video, Defendants argument suggestion that Ms. Esquivel's incident was the result of a different source – such as a ham and cheese sandwich – may be excluded to avoid further prejudice to Plaintiffs." Defendant herein would show the Court that to strike evidence that Isis Esquivel aspirated as a result of ham and cheese sandwich vomitus would be highly prejudicial to Defendant herein and would deprive the Defendant herein of its central defense in the case. . . . . Such a ruling, would amount to death penalty sanctions and would employ sanctions greater than necessary to cure the prejudice in question. (*See*, F.R.C.P. 37(e)(1)).

*Id*. (errors in original). At the hearing, BISD stated that depriving it of its central defense in this lawsuit would constitute reversible error. BISD's briefing also urges

the Court to reconsider its finding that Plaintiffs were necessarily prejudiced by the loss of the video. *Id*. at 6. Because the record contains evidence that Ms. Esquivel aspirated on her vomit, rather than the pool water, BISD asserts that it has been prejudiced by the corruption and subsequent loss of the original video footage. *Id*. at 7-8; *see also* Dkt. No. 38-1 at 133 (containing Aquatic Center Administrator Monica Rosales's testimony that she asked the BISD IT Specialist, Heriberto Castillo, to save the footage of the incident because she wanted to cover herself and use the footage to show her staff "how they did a good job.").

Plaintiffs have not provided any authority requiring the Court to exclude BISD's alleged central defense as a sanction in this case. Further, although the Court's Order of September 11, 2018 suggested that BISD's defense could be excluded as a sanction, it did not state that BISD's defense must be excluded as a sanction. Dkt. No. 57 at 11, n. 22. Therefore, although the undersigned may not revisit the Court's ruling that Plaintiffs have suffered prejudice as a result of the lost footage, the undersigned recommends that the Court decline Plaintiffs' invitation to exclude evidence in this case.

Support for this recommendation is found in the Advisory Committee's notes attendant to the 2015 amendment of FED. R. CIV. P. 37(e)(1). In relevant part, that notes provide as follows:

> Once a finding of prejudice is made, the court is authorized to employ measures "no greater than necessary to cure the prejudice." The range of such measures is quite broad if they are necessary for this purpose. There is no all-purpose hierarchy of the severity of various measures; the severity of given measures must be calibrated in terms of their effect on the particular case. But authority to order measures no greater than

> necessary to cure prejudice does not require the court to adopt measures to cure every possible prejudicial effect. Much is entrusted to the court's discretion.
>
> In an appropriate case, it may be that serious measures are necessary to cure prejudice found by the court, such as forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument, other than instructions to which subdivision (e)(2) applies. Care must be taken, however, to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2) only on a finding of intent to deprive another party of the lost information's use in the litigation. An example of an inappropriate (e)(1) measure might be an order striking pleadings related to, or precluding a party from offering any evidence in support of, the central or only claim or defense in the case. On the other hand, it may be appropriate to exclude a specific item of evidence to offset prejudice caused by failure to preserve other evidence that might contradict the excluded item of evidence.

FED. R. CIV. P. 37(e), 2015 Amendment Advisory Committee Notes. As these notes indicate, curative measures under subdivision (e)(1) should not have the effect of measures that are permitted under subdivision (e)(2) when a finding of bad faith has been made. Here, excluding BISD's alternative causation evidence would be "[a]n example of an inappropriate (e)(1) measure" because it would eliminate a central defense to Plaintiffs' claims. *See id*.

That said, BISD should not be allowed to hide its spoliation of evidence from the jury, however unintentional that spoliation may have been. Although some spoliation cannot be completely cured, the jury should be allowed the choice to infer that the loss of the footage may have prevented Plaintiffs from producing evidence of BISD's liability. Further, should Plaintiffs prevail at trial, BISD should be required to pay an additional amount, to be determined by the Court upon the trial's

completion, to compensate Plaintiffs for the expenses they have incurred as a result of the lost footage. This amount should necessarily include monies to compensate Plaintiffs for the fees and costs they have incurred in pursuing sanctions related to the spoliation of the footage.

## V. Recommendation

For the foregoing reasons, it is recommended that the Court: (1) instruct the jury that BISD failed to take reasonable steps to preserve the video footage; (2) instruct the jury that BISD's failure was not the result of bad faith, as there is no evidence that BISD intentionally failed to preserve the footage; (3) instruct the jury that the loss of the footage may have prevented Plaintiffs from producing evidence of BISD's liability; and (4) allow the parties to present evidence concerning the lost footage to the jury, including any communications or evidence that might otherwise be protected by the attorney-client privilege.[11]

Should Plaintiffs prevail at trial, it is additionally recommended that BISD be required to pay an additional amount, to be determined by the Court upon the trial's completion, to compensate Plaintiffs for the expense incurred as a result of the lost video footage, including the expense Plaintiffs have incurred in pursuing sanctions related to the lost footage.

---

[11] To the extent that BISD possesses such evidence that it has not already produced, it is recommended that the Court order BISD to provide the evidence to Plaintiffs immediately.

## VI.  Notice to the Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Signed on this 20th day of November, 2018.

_____
Ignacio Torteya III
United States Magistrate Judge